Good morning, Your Honors. My name is Hank Branham. I'm an Assistant Federal Defender from the District of Montana, and I'm here on behalf of Larry Jackson. I'd like to reserve two minutes for rebuttal. Certainly. Your Honors, this case is about an expert testifying as to Mr. Jackson's mens rea, and it's our argument that that testimony was in contravention of Rule 704B, which provides an expert witness. No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto. Such ultimate issues are matters for the trier of fact alone. There was no dispute at the trial that everyone, the witnesses, the victim, and Mr. Jackson were intoxicated the evening slash early morning of this incident. Larry Jackson and Sprout Gaughan, the victim, were friends. They remained friends. They're both large men, and this fight occurred in a very confined space in the backseat of a Chevy Beretta. There's no question Mr. Gaughan's injuries were horrific. Dr. Reynolds, however, who was not endorsed as an expert on these type of wounds but merely to testify as to his ER care of Mr. Gaughan, however, stated that in terms of facial disfigurement and the absolute lack of reason for it, and that if you're in a fight, you know those types of injuries are not designed to overcome your opponent. In essence, the doctor then was opining that Mr. Jackson had the mental state, the intent, to maim Mr. Gaughan, and that he could not have been acting in self-defense. The Court did submit ---- Ginsburg. Read those words again. That's the crux of your argument, is that those went to the ultimate issue of intent. Goldenberg. It is, Your Honor. Ginsburg. And I have a little difficulty concluding that that's accurate. All right? The quote is, in terms of facial disfigurement and the absolute lack of reason for it, in that if you're in a fight, you know, those type of injuries are not designed to overcome your opponent. And I think it was clear to the district court the importance of that testimony when he didn't ---- when the judge denied the Rule 29 and said, I'm testimony, then from the doctor's testimony, that there's a case to go to the jury on the issue of intent. We, at one point, the victim, I would say, offered conflicting testimony as to who went first in the fight. Well, I mean, what do you think happened here? You know, they have this fight. He bites half his nose off. He bites half his ears off, and all that. What do you think his intent was? Your Honor, I think he was so intact that ---- That was his intent. My argument, unsuccessful, though, was that the jury will, you know, stick with it. Yeah, well ---- He was so intoxicated, he couldn't form the intent. It was just a visceral, apparently horrific visceral reaction. But he had ever clear, he had the equivalent of a 12-pack of beer, he had whiskey. The information in the PSR later disclosed he's a raging alcoholic. I don't think he was aware, and the PSR and the district court accepted it, the United States didn't object to it, says that he blacked out. So I think someone who's blacked out doesn't have an intent. I mean, there's no escaping how horrible what he did was, but I think he was in such a state of severe intoxication, he couldn't form the intent. And I think that this expert testimony improperly got an opinion before the jury that he had, that there had to be intent because of the, according to the doctor, because of the injuries. Well, but the doctor could be saying that even without intent, he could be agreeing with you that he was so intoxicated that he didn't know what he was doing, but that these are not the typical type of injury. That one would inflict just to get control over your opponent. I don't think, my understanding of the law in the circuit is that this type of expert testimony has to be sought and hypothetical. If you have someone in a similar situation, the questioner, the attorney questioning the expert has to lay out if you've got the A, B, C, and D. And then the attorney has to also show that the defendant had A, B, C, and D. That wasn't what happened here. It was simply a statement that this man and these injuries were not the type, in the doctor's opinion, to overcome an opponent. So I don't think it was laid out the way it needs to be to get that type of expert opinion. Assuming that that evidence was properly admitted, then for purposes of the Rule 29 motion, it seems to me that taking the evidence in the light most favorable to the government, then there's a rational jury would have enough sufficient evidence. Can you address that? Why isn't there sufficient evidence of intent? I, absent the expert's opinion, I don't think there is. If your question was if the doctor's expert opinion is properly admitted, then I think there is. I can't. But my argument, of course, then is I think that was all there was, and that's what tipped it, and it was improperly admitted. Now, do we look at that under a plain error standard of review? There wasn't any specific objection under Federal Rule of Evidence 704B, correct? It is plain error. That is the, at least my reading of, I believe it's Campos, that is the standard, yes. What was the court's instruction on intent? It was the general that he had to have the intent to maim or disfigure. You have it there? It's – I don't know that I have the instruction. I can attempt, Your Honor, to find where the judge read it in the transcript. They're all – Well, you can do it on rebuttal. Okay. You know, they're all together. He did give a self-defense instruction, and he also gave the intoxication instruction, both of which, of course, we requested. I think it is similar to the Campos case in that in Campos, the district court expressed some skepticism as to the strength of the government's case. And that's at least how I took the judge's comment on the Rule 29, that from no other testimony, the doctor gave intent. And I don't think this is a case where circumstantial evidence is enough. I know the government argued that in their brief, and I anticipate they'll argue it here in a minute. But it was so horrific, and it happened in such a confined space, and it's such a – it's such a tough crime, quite frankly. I mean, that's a serious thing. And I could find only one reported case that even dealt with maiming. Given how intoxicated Mr. — Well, that's just not uncommon, you know, biting off noses and ears, it happens. It's not uncommon. Well, I don't – I don't deny that. I'm just saying that there aren't – I only found one reported case on it. Of course, that doesn't mean that they're not done. You know. I saw the — They went into trial a little while ago, and they were convicted. Let's hope so. And I saw the Holyfield fight, but that doesn't mean — Yeah, you saw that, yeah. But it's – briefly, before I use up all my time, I'd like to address sentencing. And again, the facts of the PSR were accepted, that he blacked out, yet the district court said he didn't show sufficient remorse. He was sentenced to 33 months above the guideline. And I guess most troubling is that Mr. Jackson didn't hear from the court why all this – the evidence about his past and the – his horrible upbringing with the poverty, the child abuse, the alcoholism. What it – if it was that the district court said he took it into consideration, and that may be, but it wasn't explained as to why that didn't carry the day. And I think at the very least, a defendant who's sentenced to almost three years above the guideline is entitled to know in more detail the analysis that the district court makes in imposing such a sentence that goes above the guideline. And I've got roughly a minute left with the gentleman. I mean, he had a – what, he had a pretty good record on assaults and homicides. Well, his criminal history is very high, but that's factored in. I just think there should have been some explanation as to why all these things that may have led him to this life weren't at least addressed when the sentence was imposed. Thank you. Okay. Thank you. Good morning, Your Honors. I'm Eric Wolf from the U.S. Attorney's Office in Montana. Just a few points. First, the testimony that was given was not, under this Court's interpretation of 704B, was absolutely not ultimate inference-type testimony. Mr. Branham said, well, it has to be – his understanding is it has to be in the form of a hypothetical, and that is – hypotheticals are certainly appropriate. If you actually look at what the doctor said, it is a hypothetical. The doctor says – when he says there's absolutely lack of reason for it, in that if you're in a fight, you know, those types of injuries are not designed to overcome your opponent. He's not talking about the defendant in particular. He's saying, you know, here's how it is if you're thinking hypothetically about a fight. And these types of questions are posed all the time in drug cases. And the leading case in this circuit is Gonzales, which was a 2002 case, but also Gomez-Norena, where they have the experienced detective or other investigator who takes the stand and they say, okay, sir, ma'am, in your experience, somebody has $200,000 worth of cocaine in the trunk of their car and a bunch of guns and digital scales. In your experience, is that for personal use? And they say, no, that's dealing drugs. And that's fine as long as they don't say, based on my review of the evidence, he definitely was dealing drugs. As long as they don't say that, they haven't drawn the ultimate inference. And here, it's very similar. Okay. Dr. Reynolds has been in Indian Health Service on the Apache Reservation and Fort Belknap Reservation for 25 years. And we could have gone much further down the path of drawing out an expert opinion. We could have gone, in your 25 years, have you ever had a self-defense situation with injuries like this? Can you imagine a self-defense situation with injuries? I mean, we could have lorded it all over the jury, and as long as there wasn't the ultimate inference, it would have fallen squarely within this Court's cases. So there's just no question that the ultimate inference wasn't drawn. They concede that it's plain error review. It clearly wasn't plain error. Was his intoxication such that he couldn't form an intent? There was really the evidence on intoxication. The defendant did not testify. The defendant, because right after, later in the evening, well, I'll say my conclusion first, then I'll explain why. Whereas the victim goes to the hospital and gets immediate care and winds up getting flown for reconstructive surgery, whatever injuries, if any, that the defendant had, he did not get medical care because police started to look for him later that day, and there wound up being an arm struggle, and he shot and killed a police detective, and that case is pending on appeal. So we don't have – I think there's a blood alcohol reading late in the evening on him. It's not in the record in this case. The only testimony in this case was from the driver of the car, and Mr. Branham asked her, tell us about that day, and she says, well, they showed up at my house and he had, like, one of these Quickie Mart cups full of Everclear. Maybe he did, maybe he didn't, who knows. No doubt the defendant is a big drinker, and then the rest of the day we're drinking beer and some whiskey and whatnot. But was he so drunk that he couldn't form specific intent? Well, the jury was given that question. The jury was instructed on that, and Judge Pregerson, the instructions can be found in excerpts of record 31 to 32, and they got a self-defense instruction. Given the nature of the incident, you have a verbal dispute within the car. I want to go back to Harlem. The driver doesn't want to. So the defendant throws a can of beer at her, and she gets a little scratch on her head, and then the fight is on. Something happens. It's very unclear exactly what happens initially, but testimony in the light most favorable to the government is Jackson attacks the driver in some way, shape, or form.  And in that process, the victim might be poking him in the eyes. It's unclear exactly when. But when it's all said and done, the victim has part of his nose bit off, part of his ear bit off, a very severe bite in his finger, and a person who's standing outside away from the car watches as the driver and the driver's side passenger come around and are trying to pull the defendant off the victim. The defendant is prevailing, and they finally, the testimony was it takes five or six tries, and then they leave the defendant standing there, and they book it to the hospital with the victim, and there's blood everywhere and pieces of his nose in the car, and I think one piece was on the street. So that's what the jury heard. The jury concluded it overcame any defense of intoxication. And on that point, my reaction to the doctor's testimony and the sufficiency of the evidence is I think like yours, Judge Pregerson, I don't need to be a doctor to know that these type of injuries are so severe that you have to have some type of specific intent. I mean, this is not he's not merely biting his nose. He bit off the nostril. Let me ask you about the sentencing issue. The district court sentenced the defendant to, I guess it was above guidelines. The guidelines was 87 months, and the district court imposed 120 months. So above guideline sentence. The district court went through the 553 factors, et cetera. But we have a Supreme Court case, Rita, that should be coming down. We've got an en banc case here in the Ninth Circuit, if you're familiar with it, as a voluntary. Sure. Do we need to defer our decision on this issue of the reasonableness of the sentence until after we hear these cases? My general advice to people in our office, which I will now present myself, has been if you think that some tweak in reasonableness review is likely to make a difference in a case, then you should tell the panel to hold it. And if you think that reasonableness review is not at all likely to be tweaked in any way that would make a difference in your case, then say you don't need to hold it. My view of this case is this is reasonable. The PSR, the defense counsel says, you know, the judge never explained why. It's easy to explain why when you review his record. Granted, he has psychological problems and a very bad upbringing. He is dangerous, dangerous, dangerous. And we have a comment in the PSR from a person in the tribal justice system who says another system needs to handle this man. We can't. We can't control him. So my view is Rita obviously involves the presumptive, whether a guideline sentence can be treated as presumptively reasonable. This is not a guideline sentence. It is quite possible that Rita will sort of take in the Claiborne question because Mr. Claiborne died, and they may use Rita as a vehicle to reach out and speak more broadly. The Solicitor General has recommended to the Court that it grant a case, United States v. Beale, that it could substitute for Claiborne. But based on my review of those cases and reading the transcripts of argument, I honestly can't contemplate a development in the law that would find this sentence unreasonable. But I guess I don't have any real objection to just waiting what would be a couple weeks. We don't know, of course, what the Supreme Court is going to tell us, but I suppose it might be giving some advice on what steps the district court has to go through. And I suppose in this case, the one weakness is in not really spelling out why, even though there was this horrendous childhood history, that still on the facts of this case that it should be the sentence that it gave. It would really have to be an admonition from the Supreme Court that, you know, you kind of have to address everything. The reality here is the dangerousness just outweighs everything. And it might mitigate his culpability, and he did not get the death penalty for the shooting of the police officer. But it's going to outweigh it, even if it goes back. It will. Is he currently incarcerated? He is currently incarcerated. On this and also on the police shooting? And that is pending appeal. But he's incarcerated? He is, yes. There's nothing further. Well, I just hope that they don't come down with an opinion on reasonableness because they'll just create another big mess. I worry about that a great deal myself. We need to go back to the old system where we rely on the district judges and their judgment. The one we have now is you can fill in the blank, okay? All right. Briefly, Your Honors, I don't think there would be any harm in waiting until the Supreme Court gives all of us more guidance. There was evidence from the victim as well as the driver, as to Mr. Jackson, alcohol consumption. The district court did not give anything, a specific intent instruction, merely. And counsel gave the appropriate page, which I'm now having to find. Well, what was the instruction? Excuse me, Your Honor? What did the district court instruct on that? On the alcohol point. You may consider evidence of intoxication in deciding whether the government has proved beyond a reasonable doubt that the defendant acted with the intent to commit maiming. And that's page 32 of the excerpts. It's interesting that at sentencing, the government argued that the high end of the guideline was reasonable. And now that they got more in this court, the 33 months additional, the 120 months total is a reasonable sentence. I don't think that's – I don't think it was a reasonable sentence. I certainly think it may be prudent for the court to wait until further guidance is given. And I think the expert testimony is improperly admitted. Those are our issues. Thank you. All right. Thank you very much. The matter is submitted.
judges: B. Fletcher, Pregerson, Ikuta